# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of: Highland Capital Management, L.P.,

     Debtor.

---

NexPoint Advisors, L.P.; Highland Capital Management Fund Advisors, L.P.; Highland Income Fund; NexPoint Strategic Opportunities Fund; Highland Global Allocation Fund; NexPoint Capital, Incorporated; James Dondero; The Dugaboy Investment Trust; Get Good Trust,

     Appellants,

v.

Highland Capital Management, L.P.,

     Appellee.

## RESPONSE OF THE ADVISORS, DONDERO, AND THE TRUSTS OPPOSED TO MOTION TO DISMISS APPEAL AS EQUITABLY MOOT

Direct Appeal from the United States Bankruptcy Court for
the Northern District of Texas, the Honorable Stacey G.C. Jernigan

| | | |
|---|---|---|
| Davor Rukavina, Esq. | Clay Marshall Taylor, Esq. | Douglas Scott Draper, Esq. |
| Julian P. Vasek, Esq. | Bryan Assink, Esq. | HELLER, DRAPER & |
| MUNSCH HARDT KOPF & | BONDS, ELLIS, EPPICH, | HORN, LLC |
| HARR, P.C. | SCHAFER JONES, LLP | 650 Poydras Street, |
| 500 North Akard St., 3800 | 420 Throckmorton, St., 1000 | Suite 2500 |
| Dallas, Texas 75201-6659 | Fort Worth, TX 76102 | New Orleans, LA 70130 |
| | | |
| ATTORNEYS FOR | ATTORNEYS FOR | ATTORNEYS FOR |
| APPELLANTS NEXPOINT | APPELLANT JAMES | APPELLANTS GET GOOD |
| ADVISORS, L.P. AND | DONDERO | TRUST AND THE |
| HIGHLAND CAPITAL | | DUGABOY INVESTMENT |
| MANAGEMENT FUND | | TRUST |
| ADVISORS, L.P. | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

I.    SUMMARY OF RESPONSE ........................................................... 1

II.   ARGUMENT ...................................................................................... 3

      A.    EQUITABLE MOOTNESS IS RARELY APPLIED ........................................... 3

      B.    EQUITABLE MOOTNESS APPLIES TO COMPLICATED
            REORGANIZATION PLANS AS OPPOSED TO
            LIQUIDATION PLANS LIKE HERE ........................................... 4

      C.    EQUITABLE MOOTNESS DOES NOT APPLY TO PLAN
            RELEASE, EXCULPATION, AND INJUNCTION
            PROVISIONS .............................................................................. 5

      D.    THIS COURT HAS DENIED SIMILAR RELIEF IN
            SIMILAR CASES ........................................................................ 8

      E.    EQUITABLE MOOTNESS DOES NOT APPLY ........................................... 11

            1.    The Debtor's Plan is a Liquidation Plan ................................... 11

            2.    The Debtor Has Failed to Evidence Any
                  Impracticability of Granting Relief ........................................... 13

            3.    The Requirements for Equitable Mootness Are Not Met ......... 15

III.  CONCLUSION .................................................................................. 19

CERTIFICATE OF SERVICE ................................................................ 22

CERTIFICATE OF COMPLIANCE ...................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Alberta Energy Partners v. Blast Energy Servs. (In the Matter of Blast Energy Servs.)*, 593 F.3d 418 (5th Cir. 2010) .................3, 4, 5, 8, 14, 15

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)........................................................................4

*Dropbox Inc. v. Thru In. (In re Thru Inc.)*, 2018 U.S. Dist. LEXIS 179769 (N.D. Tex. 2018) ..................................................................6, 7

*In the Matter of Age Ref. Inc.*, 537 Fed. Appx. 393 (5th Cir. 2013).......................17

*In the Matter of Grimland Inc.*, 243 F.3d 228 (5th Cir. 2001) ..................................5

*In the Matter of Hilal*, 534 F.3d 498 (5th Cir. 2008)...............................3, 4, 5, 6, 15

*In the Matter of Idearc Inc.*, 662 F.3d 315 (5th Cir. 2011) .....................................11

*In the Matter of Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009) ........................6

*In the Matter of Tex. Grand Prairie Hotel Realty, LLC*, 710 F.3d 324 (5th Cir. 2013) .....................................................3, 8, 9, 10, 11, 17

*In the Matter of Thru Inc.*, 782 Fed. Appx. 339 (5th Cir. 2019) ..............................6

*In the Matter of Scopac*, 624 F.3d 274 (5th Cir. 2010) ...........................4, 10, 11, 18

*In the Matter of SI Restructuring Inc.*, 542 F.3d 131 (5th Cir. 2008) ....................17

*In the Matter of Sneed Shipbuilding Inc.*, 914 F.3d 1000 (5th Cir. 2019).............3, 5

## RESPONSE OF THE ADVISORS, DONDERO, AND THE TRUSTS OPPOSED TO MOTION TO DISMISS APPEAL AS EQUITABLY MOOT

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., James Dondero, Get Good Trust, and The Dugaboy Investment Trust (the "Appellants"), hereby submit this response opposed to the *Appellee's Motion to Dismiss Appeals as Equitably Moot* (the "Motion"), filed by Highland Capital Management, L.P. (the "Debtor"), respectfully stating as follows:

## I.    SUMMARY OF RESPONSE

Equitable mootness conflicts with the Court's virtually unflagging obligation to exercise its jurisdiction—especially pertinent to a review of the Article I bankruptcy court. Equitable mootness applies to extraordinarily complicated reorganization plans involving many parties; not simple liquidation plans like this one involving a handful of parties. Equitable mootness applies to protect innocent creditors from the prejudice of having a plan reversed; not to protect sophisticated parties who assumed the risk of a reversal. And, equitable mootness does not protect a debtor who pushed the edges of Chapter 11 confirmation, hoping to avoid appellate review by hurrying to "scramble the eggs."

There are no "eggs" to "unscramble" here. The Debtor has presented no evidence on any prejudice, difficulty, harm, or impossibility of reversing anything undertaken to-date. On the contrary, the Debtor testified that it does not need anything under its plan to do what it has been doing in its bankruptcy case—

liquidating. The Debtor presents the Court with a laundry list of actions taken to give the appearance of a well-consummated plan, but it is all just "pushing paper." Returning the parties to the *status quo ante* requires nothing more than reversing notations on paper.

What the Appellants take most issue with—aside, that is, from the Debtor's failure to cite or address this Court's *recent* case law severely curtailing the doctrine of equitable mootness—is its representation that reversing the Plan would "jeopardize numerous third parties' reasonable reliance." Unsecured creditors *rejected* the Plan—presumably they would be pleased with a reversal. The new exit financier assumed the risk the Plan would be reversed, and would suffer no economic prejudice anyway. Most of the creditors whom the Debtor has paid, such as administrative, priority, and secured creditors, are entitled to full payment anyway, so the Plan and its potential reversal would not limit their rights.

In the end, the Debtor simply seeks to avoid appellate review of its controversial Plan, confirmed on "cramdown" over the rejection of general unsecured creditors and in violation of the absolute priority rule, and containing multiple provisions expressly forbidden by this Court's precedent. Even the Bankruptcy Court stated its belief that this Court would "extend the holding of *Pacific Lumber*" so as to bring the Plan into compliance with this Court's precedent,

effectively conceding that the Plan does not comport with such precedent at present.[1]

"[E]quity strongly supports appellate review of issues consequential to the integrity and transparency of the Chapter 11 process." *In the Matter of Hilal*, 534 F.3d 498, 500 (5th Cir. 2008). Few bankruptcy plan appeals are more consequential than this one.

## II.   ARGUMENT

### A.   EQUITABLE MOOTNESS IS RARELY APPLIED

While the Debtor spends page after page giving this Court its unsupported and speculative view of irrelevant background facts, the Debtor utterly fails to cite, much less address, this Court's *recent* precedent on equitable mootness.

"[T]his Circuit has taken a narrow view of equitable mootness." *In the Matter of Tex. Grand Prairie Hotel Realty, LLC*, 710 F.3d 324, 328 (5th Cir. 2013). "We are more hesitant to invoke equitable mootness than many circuits, treating it as a 'scalpel rather than an axe.'" *In the Matter of Sneed Shipbuilding Inc.*, 914 F.3d 1000, 1003 (5th Cir. 2019). In applying equitable mootness, it is each individual claim or appellate argument that is scrutinized for mootness and not the appeal as a whole. *See Alberta Energy Partners v. Blast Energy Servs. (In the Matter of Blast*

---

[1]      *See* Appendix In Support of Motion for Stay Pending Appeal, filed May 19, 2001, Appx. 865 (Tr. 70:10-24). This is a transcript of a hearing before the Bankruptcy Court on the Appellants' motion for a stay pending appeal, which occurred after the confirmation hearing and is therefore not part of the direct record on appeal.

*Energy Servs.*), 593 F.3d 418, 425 (5th Cir. 2010). Equitable mootness applies "only when the reorganization has progressed too far for the requested relief practicably to be granted." *Id*. at 424. It is that last requirement that is key: "[a]n appeal is equitably moot when a plan of reorganization has been so substantially consummated that a court cannot order effective relief." *In the Matter of Hilal*, 534 F.3d at 500.

Moreover, "equitable mootness is prudential, not jurisdictional." *In re Blast Energy Servs.*, 593 F.3d at 424. In other words, dismissal is not mandated but is discretionary, especially as it conflicts with the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). As long at the Court can fashion some relief, dismissal is unwarranted. *See In the Matter of Scopac*, 624 F.3d 274, 282 (5th Cir. 2010).

**B.** **EQUITABLE MOOTNESS APPLIES TO COMPLICATED REORGANIZATION PLANS AS OPPOSED TO LIQUIDATION PLANS LIKE HERE**

Equitable mootness takes away appellate rights and conflicts with this Court's duty to exercise its jurisdiction. Something extraordinary must be required for so severe a result: a complicated reorganization, involving many complex issues and numerous parties, many expectations, and potentially catastrophic consequences to a business venture and its constituents in the event a consummated plan is reversed.

In a nutshell, the collective expectations of many constituents trump the appellate rights of the individual.

Equitable mootness, therefore, "requires a <u>reorganization</u> plan." *In the Matter of Sneed Shipbuilding Inc.*, 914 F.3d at 1003 (emphasis added). "An appeal is equitably moot when a plan of <u>reorganization</u> has been so substantially consummated that a court cannot order effective relief." *In the Matter of Hilal*, 534 F.3d at 500 (emphasis added). "[I]t is a doctrine that courts have developed in response to the particular problems presented by the consummation of plans of <u>reorganization</u>." *In the Matter of Grimland Inc.*, 243 F.3d 228, 231 (5th Cir. 2001) (emphasis addded). "Equitable mootness is aimed at limiting review of <u>complex</u> plans." *In the Matter of Sneed Shipbuilding Inc.*, 914 F.3d at 1003 (emphasis added). Equitable mootness applies "<u>only when the reorganization has progressed too far</u>." *In the Matter of Blast Energy Servs.*, 593 F.3d at 424 (emphasis added).

As will be discussed below, the Plan is not a plan of reorganization at all, but is a dressed-up plan of liquidation—why else does the Plan create a trust to liquidate and monetize all assets for the benefit of creditors? Accordingly, equitable mootness does not apply to this Plan or to this Appeal.

## C. EQUITABLE MOOTNESS DOES NOT APPLY TO PLAN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS

With respect to releases and exculpations contained in a plan, this Court has repeatedly held that equitable mootness cannot be used to dismiss an appeal of a

plan's improper releases, exculpations, and injunctions, which effectively provide for a prohibited third-party release. *See, e.g., In the Matter of Hilal*, 534 F.3d at 501. The main issue in *Pacific Lumber* was whether third-party releases under a plan— one of the main issues in this Appeal—were appropriate, with this Court concluding that they were not and "broadly [] foreclos[ing] non-consensual non-debtor releases and permanent injunctions." *In the Matter of Pacific Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009). This Court rejected the argument that an appeal of these issues was moot:

> this claim is not equitably moot. Equity strongly supports appellate review of issues consequential to the integrity and transparency of the Chapter 11 process. . . the bargain the proponents claim to have purchased is exculpation from any negligence that occurred during the course of the bankruptcy. . . In short, the goal of finality sought in equitable mootness analysis does not outweigh a court's duty to protect the integrity of the process. We see little equitable about protecting the released non-debtors from negligence suits arising out of the reorganization. In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties.

*Id*. at 251-52 (internal citations and quotations omitted).

In *In the Matter of Thru Inc.*, 782 Fed. Appx. 339 (5th Cir. 2019), this Court affirmed the decision of the district court in *Dropbox Inc. v. Thru In. (In re Thru Inc.)*, 2018 U.S. Dist. LEXIS 179769 (N.D. Tex. 2018). Even though the district court dismissed all other claims as equitably moot, it did not dismiss the claim that the plan's release and exculpation provisions were improper under *Pacific Lumber*. 2018 U.S. Dist. LEXIS 179769 at *61-62. First, the district court noted that

equitable mootness is applied on a claim-by-claim, or issue-by-issue, basis. *See id.* at \*39. Second, the district court noted that this Court does not apply equitable mootness to a plan's release and exculpation provisions. *See id.* at \*61. Third, the district court held that relief from these provisions is possible without upsetting the whole plan. *See id.* Thus, the district court excised the exculpation and release provisions from the plan. *See id.* at \*69.

Therefore, in no event can equitable mootness be used as an avenue to moot the issues concerning the Plan's improper exculpation, release, and injunction provisions. How could they, since these are discrete issues affecting the Appellants: *their* claims against non-debtors are released; *their* claims against non-debtors for past and future actions and omissions are exculpated; and *they* are subject to a final federal court injunction.

In response, the Debtor argues that the Plan's exculpation and release provisions cannot be stricken pursuant to section 1127(b) of the Bankruptcy Code, which prohibits plan modifications after substantial confirmation. Motion at p. 16. The argument is remarkable because it has been directly rejected by this Court, in yet another opinion not cited by the Debtor, in which this Court reversed a lower court ruling that an appeal was equitably moot because any relief on appeal would be a prohibited section 1127(b) modification:

> Neither the language of § 1127(b) itself nor our jurisprudence applying the statute indicate that it should be applied either to confirmation

appeals or to appeals of pre-confirmation bankruptcy rulings. An
application of § 1127(b) that limits appellate review of bankruptcy
orders would mean that no bankruptcy court action could be reviewable
after substantial consummation of a plan. . . Indeed, such an application
could also render the doctrine of equitable mootness superfluous.

*In re Blast Energy Servs.*, 593 F.3d at 427-28.

## D.    THIS COURT HAS DENIED SIMILAR RELIEF IN SIMILAR CASES

The Debtor does not cite or address a fairly recent opinion from this Court

with a similar fact pattern, in which this Court refused to apply equitable mootness.

*See In the Matter of Tex. Grand Prairie Hotel Realty*, 710 F.3d 324. There, the

debtors confirmed a Chapter 11 plan of reorganization, and the secured lender

appealed, after having failed to obtain a stay pending appeal. *Id*. at 327. As the plan

had been substantially consummated, the debtors moved to dismiss the appeal as

equitably moot. *See id*. at 327-28. By the time of the appeal, the reorganized debtors

had paid more than $8 million to various secured, priority, administrative, and other

creditors; had assumed contracts; and equity investors had invested millions of

dollars into the reorganized debtors. *See id*. at 328-29. As the Debtor does here, the

debtors argued that all of these facts:

> could result in a cataclysmic unwinding of the reorganization plan . . .
> the nearly $8 million in distributions made under the Plan, and all of
> the other actions taken in furtherance and implementation of the Plan
> — including transactions with third parties — will be in jeopardy of
> needing to be undone, clawed back, or otherwise abrogated . . . any
> money judgment against them would come out of the pockets of
> unsecured creditors, as there is just one 'pot' of funds to distribute . . .
> a judgment in favor of Wells Fargo would affect the rights and

expectations of the 'Equity Purchaser' . . . who paid a substantial sum to acquire equity in the bankrupt entities pursuant to the reorganization plan.

*Id*. at 328.

This Court rejected these arguments. Noting that "[t]his Circuit has taken a narrow view of equitable mootness" and that "the possibility of partial recovery obviates the need for equitable mootness," this Court refuses to dismiss appeals for equitable mootness and permits appeals to proceed "even where granting full relief could have imposed a very significant liability on the estate, to the great detriment of both the success of the reorganization and third parties." *Id*. at 328 (internal quotations omitted).

At its core, this Court held that, while the debtors' concerns "might be realized, they need not be." *Id*. at 328. This Court held that it could grant the appellant partial relief, which would not necessarily require the unwinding of the plan itself:

The Debtors present no credible evidence that granting such fractional relief would require unwinding any of the transactions undertaken pursuant to the reorganization plan . . . Nor do the Debtors present compelling evidence that granting fractional relief would unduly burden the rights of third parties not before the court. . . In other words, the possibility exists that the Debtors could afford a fractional payout without reducing distributions to third-party claimants.

*Id*. at 328-29. And, with respect to the argument that innocent parties might suffer adverse consequences from a reversal of the plan, this Court held that the fact "that

a judgment might have adverse consequences [to the equity holders of the reorganized bankrupt] is not only a natural result of any appeal . . . but [should have been] foreseeable to them as sophisticated investors." *Id*. at 329.

Another opinion that the Debtor fails to cite or discuss is *In the Matter of Scopac*, 624 F.3d 274. In that opinion, a creditor partnered with a third-party company to propose a Chapter 11 plan, under which the two plan proponents converted $160 million of debt to equity and funded $580 million of cash to the debtors and the creditors. *See id*. at 278. The main issue concerned valuation: what was the value of the debtors' assets on the petition date versus their value at confirmation—an issue with substantial consequences as any diminution in value would have to be paid with 100 cent dollars. *See id*. at 278-79. The debtors sought to dismiss the appeal as equitably moot, a request that this Court rejected:

> The appellees here argue that the relief sought by the Noteholders would upset third-party expectations because the reorganized entity does not have liquid assets on hand to pay a judgment of even a few million dollars. . . that a judgment might have adverse consequences to MRC/Marathon is not only a natural result of any ordinary appeal--one side goes away disappointed--but adverse appellate consequences were foreseeable to them as sophisticated investors who opted to press the limits of bankruptcy confirmation and valuation rules. MRC and Marathon should not be considered third parties for the purposes of mootness analysis in this appeal any more than in the prior appeal of the confirmation order. Third and finally, so long as there is the possibility of 'fractional recovery,' the Noteholders need not suffer the mootness of their claims.

*Id*. at 282.

Not only did the Court deny dismissal because partial relief was available, but, as with *Texas Grand Prairie Hotel Realty*, the Court confirmed that parties close to the debtors, who are "sophisticated investors" and who opt to "press the limits of bankruptcy confirmation," are not innocent third parties. *Id*. Indeed, they have assumed the risk of a reversal "foreseeable to them as sophisticated investors." *In the Matter of Tex. Grand Prairie Hotel Realty*, 710 F.3d at 329.

Conversely, this Court's precedent demonstrates what the type of innocent, third parties not before the court are for purposes of equitable mootness. *See In the Matter of Idearc Inc.*, 662 F.3d 315, 320 (5th Cir. 2011). In that opinion this Court affirmed a dismissal of an appeal as equitably moot because "[t]he new common stock has been publicly traded since January 6, 2010 and in no small quantity of shares . . . numerous third parties' financial rights would be adversely affected by the proposed *de novo* review …." *Id*. at 320. There are no publicly traded equity or debt holders in this case.

## E. EQUITABLE MOOTNESS DOES NOT APPLY

### 1. The Debtor's Plan is a Liquidation Plan

In support of the Motion, the Debtor informs the Court of various steps that have been taken and executed, in order to give the Court the impression that much has been done and that eggs have been scrambled. But it is all done for one purpose: to liquidate the Debtor. The only difference is the form that the Debtor will do so

through, namely, liquidating trusts created under the Plan instead of through its pre-confirmation corporate structure. All the various transactions the Debtor lists—themselves consisting of paper notations only with no substantive affect—are merely tools to liquidate.

As the Bankruptcy Court found:

> [the Plan] involves the orderly wind-down of the Debtor's estate, including the sale of assets and certain of its funds over time, with the Reorganized Debtor continuing to manage certain other funds, subject to the oversight of the Claimant Trust Oversight Board. The Plan provides for a Claimant Trust to, among other things, manage and monetize the Claimant Trust Assets for the benefit of the Debtor's economic stakeholders.

ROA.18. As further found by the Bankruptcy Court: "the Plan's various mechanisms provide for the Debtor's continued management of its business as it seeks to liquidate the Debtor's assets, wind down its affairs, and pay the Claims of the Debtor's creditors." ROA.45. Even the Debtor testified at the confirmation trial that the Plan was a "long-term going-concern liquidation," in which the Debtor estimated that it would "be able to monetize the assets in two years. We could go out longer to three." ROA.4328 (112:10-17). "[W]e expect—our projections are that we'd be able to monetize most of the assets within two years." ROA.4405 (189:3-7). The Plan could not be clearer that it is a wind-down and liquidation, for it enjoins any person from taking any action to interfere with "the wind down of the business of the Debtor or Reorganized Debtor." ROA.90.

Indeed, it will be the creditor trust created under the Plan that will own the post-confirmation debtor, which will be run by the creditor trust and wound-down and liquidated for the benefit of that trust and its beneficiaries (creditors). ROA.135; ROA.115. And, as the Debtor informed the Bankruptcy Court, it would terminate most employees after confirmation (which it did), retaining approximately ten (10) employees to complete the wind-down of its business and the liquidation of its assets. ROA.4318 (102:8-17); ROA.4332-33 (116:10-117:10).

This Court should not be fooled. This is no complicated restructuring case, involving thousands of jobs, product lines, thousands of equity interest holders, unions to negotiate with, governmental approvals and loans to obtain, public markets to satisfy, public debt holders to represent, mass tort victims, or any of the hallmark issues found in complicated and large Chapter 11 reorganizations (*e.g.* American Airlines, General Motors, Dow Corning, Detroit, Texaco, Purdue Pharma, etc.). This is a simple, straightforward debtor, business, and plan: most assets go to a creditor trust to be liquidated for the benefit of creditors, while the Debtor continues certain limited operations to wind-down its affairs in approximately two years.

**2.    The Debtor Has Failed to Evidence Any Impracticability of Granting Relief**

Although the Debtor presents evidence in the form of testimony from Mr. Seery (much of which is inadmissibly conclusory), the question left unanswered is "so what?" The Debtor offers no evidence of any harm, disruption, prejudice, or

impossibility of "unscrambling the eggs."  For example, while the Debtor states that several million dollars have been paid out to creditors, the Debtor offers no evidence of any harm or disruption to these creditors or the Debtor if some of these payments have to be returned.  As a further example, the Debtor states that it has obtained a new loan for $45 million, but it offers no evidence or argument as to how a reversal of the Plan would affect this lender in any way.

Thus, the Debtor wholly fails to provide any nexus between the actions it has taken after confirmation, and the third requirement for equitable mootness, that the rights of third parties are prejudiced or the success of the plan is endangered.  "Only when the relief that a party requests will likely unravel the plan does it become impracticable and inappropriate for a court to grant such relief; in such a case, the court abstains from reviewing the appeal."  *In the Matter of Blast Energy Servs.*, 593 F.3d at 425.  In *Blast Energy Services*, this Court reversed the district court's finding of equitable mootness because the evidence supporting the finding was not present or was unexplained; *i.e.* why the facts rendered the appeal equitably moot.  As this Court concluded:

> The district court did not explain the possible disruption and the parties have not clarified the court's cryptic reference.  Therefore, we find it necessary to reverse and remand for further consideration and for fuller explanation as to either why the appeal is, or why it is not, equitably moot.

*Id*. at 428.  The same is true here: while the Debtor presents evidence of various facts that occurred, the Debtor presents no evidence of any alleged inequity, harm, prejudice, or impracticability of granting appellate relief.

### 3.    The Requirements for Equitable Mootness Are Not Met

Equitable mootness applies only if the rights of innocent, third parties not before the Court are prejudiced if the Plan is reversed, thus rendering relief impracticable or inappropriate.  *See In the Matter of Blast Energy Servs.*, 593 F.3d at 425; *In the Matter of Hilal*, 534 F.3d at 500.  Here, the Debtor's purported evidence takes three categories: (i) that much corporate restructuring and trust work has been done after confirmation; (ii) that certain creditors have already been repaid millions of dollars; and (iii) that the Debtor has obtained $45 million in new loans.

With respect to the first category, the Debtor's evidence is that: trusts have been created to liquidate the Debtor, trustees have been appointed, an oversight board has been appointed, a sub-trust has been created and funded to pay potential indemnification claims, prepetition partnership interests have been terminated, new corporate entities have been created, and Debtor and estate assets have been transferred to these new entities.  The Debtor does not explain why undoing any of this is controversial, prejudicial, or impractical.  It is not.  Terminated interests can be recreated, new interests can be terminated, trusts and trustees can be terminated, and the vesting of assets—done on paper only—can be undone, all easily, quickly,

cheaply, and literally with the stroke of a pen. This Court routinely reverses lower court judgments with far greater ramifications.

Certainly, there is no evidence otherwise. This is because the Debtor testified about the Plan structure at the confirmation hearing and confirmed that it did not need the Plan structure to effectuate its liquidation. At confirmation, Mr. Seery testified that:

- the Debtor was then liquidating assets, including causes of action, to benefit its creditors;

- the Debtor would continue doing so under the Plan, and all assets would vest in post-confirmation entities to benefit creditors;

- the reorganized Debtor would continue managing the same assets as at the time of confirmation;

- four of the same people on the committee at confirmation would be on the trust oversight board after confirmation;

- Mr. Seery, the chief executive and restructuring officer of the Debtor, would continue in charge as the trustee after confirmation;

- no one is putting in new money under the Plan;

- "other than a different corporate structure and the Claimant Trust, the monetization of assets for the benefit of creditors would continue post-confirmation as now," and

- "post-confirmation, [Mr. Seery is] basically going to continue managing the CLOs and funds and trying to monetize assets for creditors the same as [] today."

ROA.4400-04.

In other words, the Plan does not give the Debtor anything that it otherwise lacks in order to liquidate itself and pay creditors, meaning that creditors are not prejudiced if the Plan is reversed: the Debtor will simply liquidate in the same time period, albeit through a different structure.

The second category advanced by the Debtor is the fact that the Debtor has paid various creditors under the Plan, including $2.2 million up-front and $5.1 million to unsecured creditors. In *Texas Grand Prairie Hotel Realty*, the debtors had paid out more than $8 million to their creditors. *See In the Matter of Tex. Grand Prairie Hotel Realty*, 710 F.3d at 328. This Court did not dismiss that appeal. The Debtor offers <u>no</u> evidence whatsoever that a reversal of the Plan would lead to a disgorgement of these payments, or that any such disgorgement would be harmful, or would be impracticable. *See In the Matter of Age Ref. Inc.*, 537 Fed. Appx. 393, 398 (5th Cir. 2013) (holding no equitable mootness just because creditor may have to return payments); *In the Matter of SI Restructuring Inc.*, 542 F.3d 131, 136-37 (5th Cir. 2008) (equitable mootness did not apply to disgorgement).

The fact that the Plan may be reversed does not lead to the conclusion that these creditors would have to return payments: secured, administrative, and priority creditors—as appear to be most of the creditors paid by the Debtor—are entitled to full payment and need not return a payment. In any event, any question of

disgorgement of payments is premature, and the Bankruptcy Court has ample authority to address any such issue in an equitable manner at the appropriate time.

The third category offered by the Debtor in support of equitable mootness is the $45 million exit facility with Blue Torch Capital. But: (i) the Debtor fails to inform the Court of how much, if any, of this loan has been drawn; (ii) the Debtor fails to attach any of the underlying loan documents; and (iii) Mr. Seery fails to offer any evidence at all as to how or why a reversal of the Plan would affect this loan, any related collateral agreement, and any related guaranty agreement. A lender advancing $45 million is certainly a sophisticated party, and such a lender would certainly know of the Plan and the appeal of the Plan. Not only would the lender therefore assume the risk of the Plan being reversed, but it is virtually certain that the loan documents contain various provisions confirming that any loan and security document would remain valid in the event of such a reversal. And the Debtor is exactly the type of sophisticated party that cannot stand behind equitable mootness as it has "press[ed] the limits of bankruptcy confirmation." *In the Matter of Scopac*, 624 F.3d at 282.

This is a direct bankruptcy appeal to this Court. The Bankruptcy Court certified the direct appeal and this Court granted permission for the direct appeal. This was based on the joint representation by the appellants and the Debtor that:

> a direct appeal . . . will "materially advance the progress of the case or proceeding in which the appeal is taken" within the meaning of 28

U.S.C. § 158(d)(2)(A)(iii). This is because the party or parties who do not prevail before the District Court are virtually certain to seek a further appeal of the Confirmation Order to the Fifth Circuit. . . Furthermore, the sooner that there is finality concerning the Confirmation Order for the Parties and for all creditors in the Bankruptcy Case, the sooner that the Bankruptcy Case can be fully administered and closed and the better for all involved with the Bankruptcy Case.

*See* Exhibit "A" attached hereto at p.4.

Having agreed that a direct appeal of the Plan will materially advance the progress of the case and that the sooner an appeal is resolved the "better for all involved," the Debtor cannot now argue—and should be estopped from arguing—that this Appeal is moot or that dismissing the Appeal is appropriate.

## III.   <u>CONCLUSION</u>

This Appeal is not equitably moot, and the Court should deny the Motion. Reversing the Plan is readily doable and will not unfairly prejudice the rights of many innocent parties not before the Court.  Alternatively, the Court should not dismiss this Appeal regarding the Plan's release, exculpation, and injunction provisions as granting this partial relief does not risk unwinding the Plan.

RESPECTFULLY SUBMITTED this 18th day of October, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina

    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    500 N. Akard St., Ste. 3800
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR APPELLANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGE-MENT FUND ADVISORS, L.P.**

-- and --

**HELLER, DRAPER & HORN, L.L.C.**

By: /s/ Douglas Draper

    Douglas Scott Draper, Esq.
    650 Poydras Street
    Suite 2500
    New Orleans, LA 70130-0000
    Email: ddraper@hellerdraper.com

**ATTORNEYS FOR APPELLANTS GET GOOD TRUST AND THE DUGABOY INVESTMENT TRUST**

-- and --

**BONDS, ELLIS, EPPICH, SCHAFER JONES, LLP**

By: /s/ Clay Marshall Taylor

    Clay Marshall Taylor, Esq.
    Bryan Assink, Esq.
    420 Throckmorton, St., 1000
    Fort Worth, TX 76102
    E-mail: clay.taylor@bondsellis.com

**ATTORNEYS FOR APPELLANT JAMES DONDERO**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 18th day of October, 2021, a true and a correct copy of the foregoing document was served on the counsel of record listed below via electronic service.

Melissa Sue Hayward, Esq.
Email: mhayward@haywardfirm.com
Hayward, P.L.L.C.
10501 N. Central Expressway, Ste. 106
Dallas, TX 75231-0000

Zachery Z. Annable, Esq.
Email: zannable@haywardfirm.com
Hayward, P.L.L.C.
10501 N. Central Expressway, Ste. 106
Dallas, TX 75231-0000

Jeffrey N. Pomerantz
Email: jpomerantz@pszjlaw.com
Pachulski Stang Ziehl & Jones, L.L.P.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Douglas Scott Draper, Esq.
Email: ddraper@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-0000

Bryan Christopher Assink
Email: bryan.assink@bondsellis.com
Bonds Ellis Eppich Schafer Jones, LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102

Clay Marshall Taylor
Email: clay.taylor@bondsellis.com
Bonds Ellis Eppich Schafer Jones, LL.
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102

A. Lee Hogewood
Email: lee.hogewood@klgates.com
K&L Gates
Suite 300
4350 Lassiter at North Hills Avenue
Raleigh, NC 27609

Emily K. Mather
Email: emily.mather@klgates.com
K&L Gates
Suite 300
4350 Lassiter at North Hills Avenue
Raleigh, NC 27609

David R. Fine, Esq.
Email: david.fine@klgates.com
K & L Gates, L.L.P.
17 N. 2nd Street
Harrisburg, PA 17101-0000

By: /s/ Davor Rukavina
_____
Davor Rukavina, Esq.

## CERTIFICATE OF COMPLIANCE WITH RULE
## TYPE-VOLUME LIMITATION, TYPEFACE
## LIMITATION, AND TYPE-STYLE REQUIREMENTS

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this brief contains 4,792 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14 pt. font.

Dated: October 18, 2021.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.

4851-4916-6335.v.1 019717.00001

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

**JOINT MOTION FOR CERTIFICATION OF APPEALS OF CONFIRMATION
ORDER FOR DIRECT APPEAL TO THE FIFTH CIRCUIT**

COME NOW: (i) Highland Capital Management, L.P. (the "Debtor"), the debtor and debtor-in-possession in the above styled and numbered Chapter 11 bankruptcy case (the "Bankruptcy Case"); (ii) Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. (together, the "Advisors"); (iii) Highland Global Allocation Fund, Highland Income Fund, NexPoint Capital, Inc., and NexPoint Strategic Opportunities Fund (together, the "Funds"); (iv) James Dondero ("Dondero"); and (v) Get Good Trust and The Dugaboy Investment Trust (the "Trusts", with the Debtor, the Advisors, the Funds, and Dondero, each a "Party" and collectively the "Parties"), and file this their *Joint Motion for Certification of Appeals of Confirmation Order for Direct Appeal to the Fifth Circuit* (the "Motion"), respectfully stating as follows:

## I.    **RELIEF REQUESTED**

1. By this Motion, the Parties collectively request that the Court certify the Appeals (defined below) of the Confirmation Order (defined below) for direct appeals to the United States Court of Appeals for the Fifth Circuit, as an immediate direct appeal will materially advance the progress of the case or proceeding in which the appeal is taken.

Exhibit A

## II.     **BACKGROUND**

2.      On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating its Bankruptcy Case and creating its bankruptcy estate (the "Estate").

3.      The Debtor has remained in possession of its Estate as a debtor-in-possession throughout the Bankruptcy Case.

4.      On January 22, 2021, the Debtor filed its *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [docket no. 1808], as further modified (the "Plan").  Each of the Advisors, the Funds, Dondero, and the Trusts filed objections to the confirmation of the Plan.

5.      The Court held a hearing on the confirmation of the Plan on February 2 and 3, 2021, and announced its ruling confirming the Plan on February 8, 2021.

6.      On February 22, 2021, the Court entered its *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [docket no. 1943] (the "Confirmation Order").

7.      Thereafter, the following entities filed the following notices of appeal of the Confirmation Order, thereby initiating the following appeals of the Confirmation Order (collectively, the "Appeals"):

(i)      the Advisors filed their notice of appeal on March 1, 2021 at docket no. 1957;

(ii)     the Funds filed their notice of appeal on March 3, 2021 at docket no. 1966;

(iii)    Dondero filed his notice of appeal on March 4, 2021 at docket no. 1970; and

(iv)    the Trusts filed their notice of appeal on March 4, 2021 at docket no. 1972.

8. All of the Appeals have been docked with the United States District Court for the Northern District of Texas (the "District Court"). It is expected that the Appeals will be consolidated.

9. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2).

## III. DISCUSSION

10. The Bankruptcy Rules provide that this Court is the proper court to consider a certification of a direct appeal for a period of thirty (30) days following the filing of the first notice of appeal. *See* FED. R. BANKR. P. 8006(b) & (d). This deadline is March 30, 2021. This Motion is otherwise timely because it is made no later than sixty (60) days after entry of the Confirmation Order. *See* 28 U.S.C. § 158(d)(2)(E)

11. The Parties may file a joint certification for direct appeal, or they may request a certification for direct appeal, and the Court has the authority to make a certification on its own motion or to supplement the Parties' certification within fourteen (14) days after the certification is filed. *See* FED. R. BANKR. P. 8006(c) & (e). This Motion constitutes the Parties' joint certification for direct appeal and request for such certification under 28 U.S.C. § 158(d)(2)(A)(i).

12. A direct appeal of the Confirmation Order to the Fifth Circuit is authorized under certain conditions. *See* 28 U.S.C. § 158(d)(2)(A). These conditions are that this Court, or the District Court, on its own motion or on motion of the Parties "acting jointly," certifies that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A)(i)-(iii).

13.     Here, the Parties agree and certify that a direct appeal of the Confirmation Order to the Fifth Circuit will "materially advance the progress of the case or proceeding in which the appeal is taken" within the meaning of 28 U.S.C. § 158(d)(2)(A)(iii). This is because the party or parties who do not prevail before the District Court are virtually certain to seek a further appeal of the Confirmation Order to the Fifth Circuit. A direct appeal of the Confirmation Order will therefore save the parties upwards of one year or longer, together with hundreds of thousands of dollars in combined attorney's fees and expenses for briefing and arguing the Appeals before the District Court. Because the Fifth Circuit is virtually certain to hear any subsequent appeal anyway, a direct appeal will not materially affect its caseload. Furthermore, the sooner that there is finality concerning the Confirmation Order for the Parties and for all creditors in the Bankruptcy Case, the sooner that the Bankruptcy Case can be fully administered and closed and the better for all involved with the Bankruptcy Case. The foregoing considerations are recognized as valid grounds for a certification. *See, e.g.,* In re MPF Holding U.S. LLC, 444 B.R. 719,727 (Bankr. S.D. Tex. 2011) (finding subsection (iii) circumstance met, in part, because it was very likely that any decision by the District Court would be appealed to the Fifth Circuit, the outcome would likely determine whether unsecured creditors would receive payments on their claims and noting that the parties' agreement on the certification was significant).

14.     "If the bankruptcy court, the district court . . . receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A) [ ] then the bankruptcy court . . . shall make the certification described in subparagraph (A)." 28 U.S.C. § 158(d)(2)(B).

15.     Here, the Parties represent all of the parties (appellants and appellee) to the Appeals. The Deadline for any other person to file a notice of appeal of the Confirmation Order has expired.

Therefore, since at least a majority of the parties to the Appeals are making this request jointly, the Parties respectfully submit that the Court should issue the requested certification certifying the Appeals for direct appeal to the Fifth Circuit as materially advancing the Bankruptcy Case.

## IV.     RESERVATION OF RIGHTS

16.     There are at present multiple disputes between various of the Parties, in addition to the Appeals.  For the avoidance of doubt, no Party, by agreeing to this Motion or to any representation made in this Motion, waives or prejudices any claim, right, or defense it may have with respect to the Appeals and any and all other matters, or explicitly or implicitly ratifies, agrees with, or concedes any argument, position, or issue of any other Party.  The Parties agree solely that a direct appeal of the Appeals to the Fifth Circuit will materially advance the progress of the case as stated above.  Such agreement is not to be used to infer any other agreement on any other issue.

## V.     PRAYER

WHEREFORE, PREMISES CONSIDERED, the Parties jointly and respectfully request that the Court enter an order certifying the Appeals for direct appeal to the Fifth Circuit.

RESPECTFULLY SUBMITTED this 16th day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    E-mail: drukavina@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P., AND
NEXPOINT ADVISORS, L.P.**

**-- AND --**

**PACHULSKI STANG ZIEHL & JONES LLP**

By: /s/ Jeffrey N. Pomerantz (*w/ permission*)
    Jeffrey N. Pomerantz (*pro hac vice*)
    Ira D. Kharasch *pro hac vice*)
    John A. Morris (*pro hac vice*)
    Gregory V. Demo (*pro hac vice*)
    Judith Elkin (TX Bar No. 06522200)
    Hayley R. Winograd (*pro hac vice*)
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067
    Telephone: (310) 277-6910
    Facsimile: (310) 201-0760
    E-mail: jpomerantz@pszjlaw.com
    ikharasch@pszjlaw.com
    jmorris@pszjlaw.com
    gdemo@pszjlaw.com
    jelkin@pszjlaw.com
    hwinograd@pszjlaw.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT, L.P.**

**-- AND --**

**K&L GATES LLP**

By: /s/ A. Lee Hogewood III (*w/ permission*)
    A. Lee Hogewood, III (*pro hac vice*)
    4350 Lassiter at North Hills Ave.
    Suite 300
    Raleigh, NC 27609
    Telephone: (919) 743-7306

    Artoush Varshosaz (TX Bar No. 24066234)
    1717 Main Street, Suite 2800
    Dallas, TX 75201
    Telephone: (214) 939-5659

**COUNSEL FOR HIGHLAND INCOME FUND, NEXPOINT STRATEGIC OPPORTUNITIES FUND, HIGHLAND GLOBAL ALLOCATION FUND, AND NEXPOINT CAPITAL, INC.**

**-- AND --**

**BONDS ELLIS EPPICH SCHAFER JONES LLP**

By: /s/ Clay M. Taylor (*w/ permission*)
    D. Michael Lynn – State Bar ID 12736500
    John Y. Bonds, III – State Bar ID 02589100
    Clay M. Taylor – State Bar ID 24033261
    Bryan C. Assink – State Bar ID 24089009
    420 Throckmorton Street, Suite 1000
    Fort Worth, Texas 76102
    (817) 405-6900 – Telephone
    (817) 405-6902 – Facsimile

**COUNSEL FOR JAMES DONDERO**

**-- AND --**

**HELLER, DRAPER & HORN, L.L.C.**

By: /s/ Douglas S. Draper (*w/ permission*)
    Douglas S. Draper, La. Bar No. 5073
    ddraper@hellerdraper.com
    Leslie A. Collins, La. Bar No. 14891
    lcollins@hellerdraper.com
    Greta M. Brouphy, La. Bar No. 26216
    gbrouphy@hellerdraper.com
    650 Poydras Street, Suite 2500
    New Orleans, LA 70130
    Telephone: (504) 299-3300
    Fax: (504) 299-3399

**COUNSEL FOR THE DUGABOY INVESTMENT TRUST AND GET GOOD TRUST**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 16th day of March, 2021, true and correct copies of this document were electronically served on parties entitled to notice thereof, including on counsel for the Debtor, the Committee, and the U.S. Trustee.

        /s/ Davor Rukavina
        Davor Rukavina